UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

NICHOLAS A. MAY,

                        Petitioner,

       v.                              9:22-CV-0731
                                          (DNH/ML)

JOSEPH E. COREY, Superintendent of Auburn
Correctional Facility,

                        Respondent.

─────────────────────────────────

APPEARANCES:                              OF COUNSEL:

NICHOLAS A. MAY
Petitioner, pro se
19-B-0135
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. LETITIA JAMES                JAMES FOSTER GIBBONS, ESQ.
Attorney for Respondents           Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

MIROSLAV LOVRIC
United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

## I.    INTRODUCTION

       Petitioner Nicholas May seeks federal habeas relief pursuant to 28 U.S.C. § 2254.  Dkt.

No. 1, Petition ("Pet.").[1]  The Court directed respondent to answer the petition; however,

respondent successfully requested permission to file a motion to dismiss the action as

─────────────────────────────────

[1] For the sake of clarity, citations to parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

untimely instead.  Dkt. No. 2, Decision and Order (directing response); Dkt. No. 10, Letter

Motion (seeking to file a motion in lieu of an answer); Dkt. No. 11, Text Order (granting

motion); Dkt. No. 12, Motion to Dismiss.

Petitioner was provided an opportunity to respond to the motion.  Dkt. No. 13, Notice.

After successfully seeking four extensions of time to file the response, the Court denied the

fourth request for failing to show good cause.  Dkt. Nos. 14, 16, 18, 20, 22, Letter Motions

(requesting extensions); Dkt. Nos. 15, 17, 19, 21, Text Orders (granting extension requests);

Dkt. No. 23, Text Order (denying final extension request and confirming response deadline of

June 29, 2023).  Petitioner did not ultimately file a response.

For the reasons which follow, it is recommended that respondent's motion to dismiss be

granted.  Furthermore, the petition should be denied and dismissed in its entirety.

## II.    THE PETITION

Petitioner challenges a 2019 judgment of conviction in Broome County, pursuant to a

jury verdict, of predatory sexual assault against a child and second degree course of sexual

conduct against a child.  Pet. at 1-2; *see also People v. May*, 188 A.D.3d 1309, 1309 (3rd

Dep't 2020).  The New York State Appellate Division, Third Department affirmed the

judgment of conviction and, on December 31, 2020, the New York State Court of Appeals

denied leave to appeal.  Pet. at 2-3; *May*, 188 A.D.3d at 1312, *lv. denied*, 36 N.Y.3d 974

(2020).  Petitioner did not file a petition for a writ of certiorari or otherwise collaterally attack

his state court conviction.  Pet. at 3, 10, 12.

Petitioner argues that he is entitled to federal habeas relief because (1) his counsel was

constitutionally ineffective, Pet. at 5-7; (2) the trial court erred when it allowed two fact

2

witnesses to offer expert testimony, *id.* at 7-8; and (3) the evidence was legally insufficient to support the conviction, *id.* at 8-10.[2]  The petition was signed and placed into the facility mailing system on July 6, 2022.  *Id.* at 15.

**III.    DISCUSSION**

> **A.    Standard of Review**

Respondent moves to dismiss the petition, pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that it fails to state a claim upon which habeas corpus relief may be granted.  Dkt. No. 12.  Specifically, respondent contends that the petition is untimely and neither statutory tolling nor any equitable considerations excuse the time-bar.  Dkt. No. 12-1 at 5-11.

"Motions to dismiss habeas petitions on procedural grounds pursuant to Rule 12(b)(6) are not inconsistent with the Habeas Rules, given the wide discretion afforded district judges in the disposition of habeas petitions."  *Williams v. Breslin*, 274 F. Supp. 2d 421, 424-25 (S.D.N.Y. 2003).  Dismissal of an action "is proper only where it appears beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 425 (citing cases).  "[T]he Court must accept all well-pleaded factual allegations in the Petition as true and draw[] all reasonable inferences in favor of the petitioner . . . [and b]ecause [petitioner] is proceeding pro se, his petition must be read liberally and should be interpreted to raise the strongest arguments it suggests."  *Id.* (internal quotation marks and citations omitted).

> **B.    Timeliness**

> > **1.    One Year Statute of Limitations**

---

[2]  These are the same three claims that petitioner advanced during his direct appeal of his state criminal conviction.  *See May*, 188 A.D.3d at 1309-1312.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review.  28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[3]

For purposes of section 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case.  *Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 547-49 (2d Cir. 2009).  However, in light of the global pandemic, the Supreme Court issued a general order declaring that for a lower court decision filed between March 19, 2020, and July 18, 2021, the deadline for applying for certiorari would be temporarily extended from ninety to 150 days.  *See* 334 F.R.D. 801 (U.S. Mar. 19, 2020), *available at* https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf (extending deadline); U.S. Sup. Ct. Orders Rescinded, 28 U.S.C. (U.S. July 19, 2021), *available at* https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf (rescinding pandemic-instituted protocols).

In this case, as petitioner indicates in his petition, his conviction was affirmed by the

---

[3] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D).  None of the bases for a later date upon which the statute of limitations could have begun to run appear to apply in this case.

Court of Appeals on December 31, 2020.  Pet. at 2-3; *May*, 36 N.Y.3d 974.  As previously indicated, because this date fell within the time period that the pandemic protocols controlled – which temporarily extended the deadline to apply for certiorari – petitioner's conviction became "final" for purposes of the AEDPA 150 days later, on June 1, 2021, when the time to seek certiorari expired.[4]  *Thaler*, 565 U.S. at 149.  Petitioner had one year from that date, or until June 1, 2022, to file a timely federal habeas petition.  The present petition, executed on July 6, 2022, was filed over a month too late.

### 2.    Statutory Tolling

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548.  The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run."  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).  The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was taken.  *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

Here, petitioner explicitly states that he did not file any other state court post-conviction or collateral challenges.  Pet. at 3, 10, 12.  Therefore, statutory tolling does not apply.

### 3.    Equitable Tolling

---

[4]  The date the conviction was final was May 30, 2021; however, because that day was a Sunday and the following Monday was Memorial Day, a federally-observed holiday, the Court finds that the state court conviction became final on Tuesday June, 1, 2021.  *See* Fed. R. Civ. P. 6(a)(1)(c) & (6).

Equitable tolling applies only in "rare and exceptional" circumstances. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *see also Smith*, 208 F.3d at 17.

> To show that extraordinary circumstances 'prevented' him from filing his petition on time, [P]etitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [P]etitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Here, liberally construing petitioner's argument, he asserts that equitable tolling should apply because he contracted COVID "and was affected for over 2 months." Pet. at 14. This resulted in petitioner becoming "extremely fearful of contracting [COVID] . . . again," rendering him "unable to go to the law library for fear of contraction." *Id.* at 14-15. Petitioner appears to legitimize his fears by explaining that, despite the mask mandates, staff rarely wore masks in the facility. *Id.* Further, "[t]he [law] library . . . was shut down several times." *Id.* at 15. Respondent argues that petitioner has failed to establish that he shown either exceptional circumstances prevented him from filing his petition on time or that he acted with reasonable diligence throughout the period by which his filing was late. Dkt. No. 12-1 at 7-10. The undersigned agrees.

"While the pandemic undoubtedly created lamentable challenges for habeas petitioners, courts in this Circuit have held that its mere existence is not alone sufficient to

6

warrant equitable tolling." *Cohen v. Superintendent of Sing Sing Corr. Facility*, No. 1:22-CV-2553, 2022 WL 2704509, at *4 (E.D.N.Y. July 8, 2022) (citing cases). Instead, as the Second Circuit has previously articulated, a "medical condition[] . . . can manifest extraordinary circumstances," *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); however, "conclusory and vague claim[s], without a particularized description of how [the medical] condition adversely affected [petitioner's] capacity to function generally or in relationship to the pursuit of [his or] her legal rights, is manifestly insufficient to justify any further inquiry into tolling," *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). *See also Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) (holding "that physical . . . illness could toll the AEDPA . . . however, a petitioner . . . has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period.")..

Here, petitioner's first argument, that he twice-contracted COVID and was fearful of contracting it again so he was effectively precluded from leaving his cell, is unpersuasive to satisfy the test for tolling. Petitioner has articulated a medical condition, COVID-19, however, he fails to indicate specifically what two months he was impacted with his illness and how that specifically prohibited him from filing the instant petition. Further, petitioner provided no proof of his illness, instead relying on his own self-serving representations.

Conversely, respondent provided an affidavit from an employee who reviewed the facility's medical files "between January 1, 2021 to July 6, 2022," and found that petitioner "was not under any medical restriction, quarantine or isolation during the indicated time period . . . [and it] . . . contains no indication that he was ever diagnosed with COVID-19 during the indicated time period." Dkt. No. 12-2 at 1-2. Instead, it indicated that petitioner received a COVID vaccine on May 7, 2021, as well as a second booster shot on November

7

30, 2021.  *Id.*  Consequently, the medical record indicates that not only did petitioner not get COVID during the time in question, he received optimal protection by receiving the vaccine in May of 2021.  Therefore, it does not appear petitioner has met his burden of demonstrating that his experience with COVID-19 constitutes an exceptional circumstance.

Further, petitioner has provided no specific explanation about why he could not go to the law library outside of his own self-imposed limitations.  For example, petitioner "does not articulate the nature of [any law library] restrictions, when they began, how long they lasted or the efforts he undertook to file the [p]etition in a timely manner."  *Nunez v. Danforth*, No. 1:20-CV-10230, 2021 WL 1063127, at *2 (S.D.N.Y. Mar. 18, 2021).  Instead, facility records indicate that petitioner was never deemed "physically unable to go to the law library during normal operating hours."  Dkt. No. 12-2 at 2.  The facility's "law library is open for access by incarcerated individuals according to a regular schedule[; however, i]ncarcerated individuals with imminent deadlines in state or federal court are entitled to special priority access to the law library."  *Id.*  Even assuming petitioner was ill or the library was on a modified schedule, "petitioner has not suggested that he was entirely without library access throughout the period he seeks to toll, and restricted access to library facilities, by itself, is not an extraordinary circumstance."  *Perez v. Johnson*, No. 1:21-CV-3061, 2023 WL 4405656, at *5 (E.D.N.Y. July 7, 2023) (citing cases) (internal quotation marks and citations omitted).  That failure is fatal to his pursuit of equitable tolling.  *Id.*

Moreover, petitioner has not indicated why he needed law library access because "the petition contains no legal citations that would have required lengthy library access prior to submission, but instead merely restates the claims that [petitioner] raised in his post-conviction briefs almost verbatim."  *Perez*, 2023 WL 4405656, at *5 (internal quotation marks

and citations omitted).  In *Perez*, the Eastern District of New York held that "petitioner's failure to describe any step he took toward preparing his application during the relevant period means the link of causation between the extraordinary circumstances and the failure to file is broken, and equitable tolling is not warranted."  *Id.* (internal quotation marks and citation omitted).  The same holds true here.  Petitioner has failed to establish either an exceptional circumstance or causal link; therefore, equitable tolling will not save the untimely petition.

### 4.    Equitable Exception

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  It is important to stress that "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error."  *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

Here, petitioner fails to raise, let alone present, any claim of actual innocence.  One of petitioner's claims is that his conviction was not supported by legally sufficient evidence.  Pet. at 8.  Specifically, petitioner argues that because the state court relied solely on testimony and there was not affirmative physical proof of sexual abuse, petitioner should not have been convicted.  *Id.*; *see also May*, 188 A.D.3d at 1310 (explaining that "[t]he only direct proof for th[e criminal] accusations came from the victim, who testified that [petitioner] subjected her to dozens of instances of sexual conduct [and contact and] . . . expert testimony [was presented] as to how the victim's unremarkable sexual assault examination was not unusual

for child sexual abuse victims[.]")

"To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Rivas v. Fischer*, 687 F.3d 514, 518 (2d Cir. 2012); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). "The standard's demand for evidence *of innocence* references factual innocence, not mere legal insufficiency." *Hyman*, 927 F.3d at 657 (internal quotation marks and citations omitted); *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("'[A]ctual innocence means factual innocence, not mere legal insufficiency.") (citations omitted).

In this case, petitioner has failed to provide any new, reliable evidence that he is actually innocent of the crime for which he was convicted. Instead, petitioner relies on legal insufficiency which cannot be utilized to invoke this equitable exception and save the instant action from the time bar.

In sum, the petition is untimely and there are no appropriate tolling or equitable considerations available to excuse the late filing.

IV.    **CONCLUSION**

**WHEREFORE**, it is

**RECOMMENDED** that respondent's motion to dismiss, Dkt. No. 12, be **GRANTED**; and it is further

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety**;** and it is further

**RECOMMENDED** that no Certificate of Appealability ("COA") shall issue because

petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[5] and it is further

RECOMMENDED that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

ORDERED that the Clerk of the Court respectfully provide petitioner with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

ORDERED that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).


DATED: August 14, 2023

Miroslav Lovric
U.S. Magistrate Judge

---

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).